UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| ALBEY BROCK – BELL COUNTY | ) | |
| JUDGE EXECUTIVE, | ) | |
| | ) | |
| | ) | Civil No. 10-162-GFVT |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| V. | ) | **&** |
| | ) | **ORDER** |
| | ) | |
| BELL COUNTY VOLUNTEER FIRE | ) | |
| DEPARTMENT, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

Albey Brock, Bell County Judge-Executive, filed a Motion for Temporary Restraining Order. [R. 54.]  His motion for TRO was denied, [R. 56] but the Court also construed the motion as a request for preliminary injunction and reserved ruling on whether such injunctive relief was necessary until after hearing argument.  That hearing was held on July 10, 2012. [R. 60.]  After careful review of the issue, Brock's request for injunctive relief will be DENIED.

# I

By now, the details of this dispute are well documented in the record.  In 1979, the Bell County Fiscal Court and the Bell County Volunteer Fire Department executed an Agreement wherein BCVFD agreed to provide fire protection services "to all areas of Bell County, Kentucky, to the best of its ability." [R. 57-1.]  As of 2010, the BCVFD operated eight fire stations in Bell County: Arjay, Colmar, Right Creek, Four Mile, Brownie's Creek, Calloway, East Pineville, and Clear Creek. [R. 1-2, at 4.]  In the last

few years, their Agreement has faced several challenges because of budgetary discussions involving Brock, the Fiscal Court, and the BCVFD. [R. 1-2.] Because of the budget wrangling, in 2011, the BCVFD closed the Arjay and Colmar fire stations [R. 36, R. 54, at 2] and in June of last year, the BCVFD decided to close three more. [R. 54.] Brock wishes to enjoin it from closing any fire stations; selling, donating, or otherwise transferring ownership of fire trucks, incident command vehicles, or personal property; and taking any action to reduce the current fire protection services for Bell County's citizens. [R. 54-2, at 1-2.]

## II

## A

Preliminary Injunctions are issued pursuant to Federal Rule of Civil Procedure 65. Before granting a preliminary injunction district courts must consider (1) whether there is a likelihood of success on the merits of the plaintiff's claim; (2) whether the plaintiff will suffer irreparable harm if the injunction is not granted; (3) whether others would be harmed by granting the injunction; and (4) whether the public good is served by issuing the injunction. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000) (citing *McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc)). "These factors are to be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction." *Id.* (citing *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 347 (6th Cir. 1998). Careful review of these factors does not support Brock's request for injunctive relief.

**B**

Brock fails to show irreparable harm to the citizens of Bell County.  To establish irreparable harm, he must show that unless injunctive relief is granted, Bell County citizens will suffer "'actual and imminent' harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006) (citing *Monsanto Co. v. Manning*¸ 841 F.3d 1126, 1988 WL 19169, at *6 (6th Cir. Mar. 8, 1998)).  "The failure to show irreparable harm, by itself, can justify the denial of preliminary injunctive relief without consideration of the other three factors." *Essroc Cement Corp.*, 593 F.Supp.2d 962, 970 (W.D. Mich. 2008).  "[A] party seeking an injunction bears a heavy burden and must demonstrate more than an unfounded fear of harm." *Smith v. State Farm Fire and Cas. Co.*, 737 F.Supp.2d 702, 712 (E.D. Mich. 2010).

Even though Brock seeks to tie the perilous dangers of fires to the closing of the BCVFD fire stations, there is no evidence that the threat of fires not being responded to is imminent.  He would have you believe that fires are rapidly and ferociously spreading across parts of Bell County, destroying everything in their path, and that BCVFD is unable to respond.  There is no mistaking that fires are serious matters when they arise, but their occurrence cannot be predicted with any certainty.  Such harm in the abstract does not make it imminent, merely speculative, which requires a finding of no irreparable harm. *See Day v. Williams*, 2207 WL 855322, at *5 (W.D. Ky., March 15, 2007) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983))..

To underscore his point, Brock relied on witness Gary Matthew Durham, a Bell County resident, whose home was destroyed by a fire.  Mr. Durham was on his way to

Knoxville, Tennessee, when he received a call from his wife's aunt letting him know that his house was on fire. According to Mr. Durham's recollection, it took him approximately an hour and 30 minutes to get home. Upon his arrival, he encountered a perilous situation. He recounted that BCVFD fire fighters were at his residence, but were unable to prevent the fire from destroying his home. He recalled the presence of two fire trucks at the scene. One, according to his testimony, arrived shortly after he did, but had an inoperable fire hose. The other fire truck did not arrive at the scene until 35 to 45 minutes after him. The implied message of Mr. Durham's testimony is that because of a failed response by the BCVFD his home no longer exists. BCVFD was unsuccessful in extinguishing the fire, but the record does not establish that response time was the cause. It could just as easily have been the result of faulty equipment. Nevertheless, it is difficult to argue that BCVFD did not attempt to adequately respond in accordance with the Agreement.

Particularly significant, the Agreement fails to expressly identify a specific number of fire stations and fire trucks that must be maintained. Moreover, there is no mention of appropriate response times. [R. 57, at 1.] The Agreement only requires that the BCVFD "provide fire protection to all areas of Bell County . . . to the best of its ability." [*Id.*]

Furthermore, a rise in insurance premiums for Bell County residents is not considered irreparable harm. The Sixth Circuit Court of Appeals explains that "'[a]n injury is irreparable if it cannot be undone through monetary remedies.'" *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1382 (6th Cir. 1995) (quoting *Interox Am. V. PPG, Indus., Inc.*, 736 F.2d 194, 202 (5th Cir. 1984)). Brock expresses

concern that property insurance will rise in Bell County as a result of the closing of fire stations. However, this Court has found that plaintiffs unjustly facing such burdens can be made whole by monetary means. *See Adkins v. Am. Standard, Inc.*, 2005 WL 2137740, at *6 (E.D. Ky., Sept. 2, 2005) (court noting that if plaintiffs succeed on the merits regarding raise in insurance premiums, "they can be made whole by money damages."). Because Brock has failed to show that there is actual or imminent harm, or that monetary damages are inadequate, there is no finding of irreparable harm.

## C

The likelihood of success on the merits of Brock's case is unclear at this time. In Brock's Complaint, he alleges that the BCVFD has breached the Agreement because at the time he filed the Complaint it was considering closing two fire stations. [R. 1-2, at 5.] To establish a breach of contract claim in Kentucky, the plaintiff must show (1) the existence of a contract with the defendant; (2) a breach of that contract; and (3) damages as a result of the defendant's breach. *Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. Ct. App. 2007).

Subsequent to Brock's filing of his Complaint, the BCVFD did close two fire stations, and now proposes to close more, but the Agreement does not require that the BCVFD maintain a certain number of fire stations to fulfill its obligation. Instead it is required to protect Bell County to "the best of its ability…" [R. 1-2, at 12.] Without having any obligation to maintain a certain number of stations, it can be argued, quite persuasively, that there is no breach on the part of the BCVFD.

Brock points to minimum standards set by the National Fire Protection Association to suggest that the Agreement has been breached. The Association

recommends a response time of eight minutes. [R. 59, at 8.]  Those standards, however, are meaningless as far as their Agreement is concerned.  Their Agreement does not import the standards set by the Association.  Without solid evidence to support Brock's charge, the resolution of this matter is unclear.

### D

In assessing the harm to others, the Court must "(1) balance the harm [p]laintiff would suffer if its request for a preliminary injunction were denied against the harm [d]efendants would suffer if an injunction were to issue, and (2) assess the impact the preliminary injunction might have on relevant third parties." *Merk Sharp & Dohme Corp. v. Conway*, 861 F.Supp.2d 802, 817 (E.D. Ky. 2012).  Brock asserts that the balance of harms favors Brock and Bell County's residents. [R. 59, at 10.]  To accept Brock's position requires interpreting the Agreement to include an implicit statement about the number of fire stations the BCVFD must maintain.  But as has already been mentioned, the Agreement does not include any provision of that nature.  Forcing the BCVFD to maintain fire stations that it contends it does not have the resources to maintain, when there is no requirement to do so, could lead to an unlawful limitation of its property rights.

### E

Finally, there is no determinable injury to the public interest by not granting injunctive relief.  The Supreme Court teaches that it is important that district courts address public interest considerations in a thorough manner. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 27 (2008).  "'The public interest analysis for the issuance of a preliminary injunction requires us to consider whether there exists

some critical public interest that would be injured by the grant of preliminary relief.'"
*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011) (citing *Cal. Pharmacists Ass'n v. Maxwell–Jolly,* 596 F.3d 1098, 1114–15 (9th Cir.2010)).

The public interest to be considered here is the potential loss of fire protection services to Bell County citizens.  Brock argues that "maintaining the current level of fire protection services and protecting the property and lives of Bell County residents is served" by preventing the BCVFD from closing several fire stations. [R. 59, at 11.]  This argument, however, relies on an inherently flawed foundation, which is that the Agreement ties the number of fire stations to the adequacy of the services provided.  This is not the case.  Instead, the BCVFD will "provide fire protection to all areas of Bell County . . . to the best of its ability…" [R. 1-2, at 12.]  This is the expectation set by the Agreement and so long as the BCVFD provides such support the public interest is not hurt.  Again, as the analysis pertaining to the likelihood of success on the merits underscored, it is unclear whether the BCVFD has breached its obligation.  Therefore, the harm to the public interest cannot be measured.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** that Brock's Motion for Temporary Restraining Order and Preliminary Injunction [R. 54] is **DENIED**.

This 1st day of March, 2013.



Signed By:
*Gregory F. Van Tatenhove*
**United States District Judge**